# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A Sony Vaio laptop computer, bearing serial<br>number 275270353002738 | )<br>)<br>)  Case No.  2:11-mj-00066<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A Sony Vaio laptop computer, bearing serial number 275270353002738

located in the _____ Southern _____ District of _____ West Virginia _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
    X evidence of a crime;
    ☐ contraband, fruits of crime, or other items illegally possessed;
    X property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

FILED
JUL 28 2011
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a quantity of morphine, a Schedule II controlled substance |
| 18 U.S.C. § 1952 | Interstate travel in aid of racketeering |

The application is based on these facts:
See attached affidavit.

    ☐ Continued on the attached sheet.
    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

LARRY R. ELLIS, Assistant United States Attorney
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Jun 15, 2011

*Judge's signature*

City and state: Charleston, West Virginia

MARY E. STANLEY, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

1. Electronic Mail;

2. Banking records; and

3. Records of internet browsing/shopping.

A F F I D A V I T

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, F/Sgt. Lee Ayers, being first duly sworn, do hereby depose and state as follows:

1. The affiant has been a sworn member of the West Virginia State Police for approximately 22 years. The affiant has received training from the West Virginia State Police and various other schools and routinely works in the area of criminal investigation and identification and detection of controlled substances. The affiant has obtained training in criminal investigations, homicide investigations, drug identification, drug investigation techniques and laws regulating controlled substances and has completed the 32-week training course at the West Virginia State Police Academy. The affiant has supplemented his training by attending various criminal and/or drug investigative schools through the West Virginia State Police Bureau of Criminal Investigations (BCI), the Federal Bureau of Investigations (FBI), and the Drug Enforcement Administration (DEA). The affiant is currently assigned to BCI as Coordinator, Troop 8, Region 6, Beckley, West Virginia.

2. During his tenure with the West Virginia State Police, the affiant has successfully investigated, arrested, and prosecuted numerous violent offenders in both state and federal court. The affiant has particularized training in the investigation of drug trafficking and other violent crimes. The affiant has routinely

investigated numerous cases involving the use, consumption, sale and possession of illegal controlled substances. The affiant routinely deals with the investigation of trafficking and possession of various controlled substances including marijuana, methamphetamine, cocaine (HCL), cocaine base ("crack"), pharmaceuticals, and other street drugs. As a result, the affiant is intimately familiar with the appearance, packaging, and paraphernalia associated with controlled substances. Moreover, the affiant is equally familiar with terminology, methods of communication, habits, techniques, organization, and practices of drug traffickers and users. The affiant has purchased controlled substances through cooperating witnesses in "controlled purchase" situations as well as personally purchasing controlled substances in hand-to-hand transactions.

3. The affiant has supervised Sgt. Chris Kelly of the West Virginia State Police for the past seven years. The affiant has worked with him regularly over that time and has found Kelly to be a competent officer and a reliable source of information.

4. Sgt. Chris Kelly of the West Virginia State Police advised the affiant that on the evening of June 7, 2011, at or near Summersville, Nicholas County, West Virginia, he made an undercover controlled buy of a controlled substance, that is, approximately 19 60-milligram morphine tablets, from a man identified to him as Glen Hunt. During that transaction, Sgt. Kelly delivered $480 in cash

to the seller, who then gave him the 19 pills which appeared to be 60-milligram morphine tablets. Kelly told the affiant that he made the undercover purchase from Glen Hunt while Hunt was driving a white 4-door Mercedes Sedan bearing New York License Registration No. FAF 8071 then parked along old Lewisburg Road near Summersville in Nicholas County, West Virginia.

5. According to Sgt. Kelly, during this transaction, the seller removed the pills he delivered to Sgt. Kelly from the console in the middle of the floor in the front of the Mercedes sedan. During the transaction, Sgt. Kelly asked the seller whether he could sell him more of this same type of pill later. Glen Hunt agreed to sell Sgt. Kelly double the amount at a later date. Glen Hunt also told Sgt. Kelly that he had other pills available to him at the time he made the sale to Sgt. Kelly. When Kelly transferred the $480 cash to Glen Hunt, he observed Glen Hunt put the money into the right front pocket of his blue-jeans which pocket, Kelly observed, was bulging with what appeared to Sgt. Kelly to be a substantial wad of cash.

6. Kelly further informed the affiant that while he was conducting the controlled buy with Glen Hunt on June 7, 2011, Sgt. Kelly was able to observe in the cab of the Mercedes sedan a portable GPS device of the kind commonly used to navigate on highways. Kelly further observed that the Mercedes sedan was also equipped with a factory-installed GPS device. The affiant is aware

that such devices often store the commands that are given and questions that are asked and further store information about routes taken and recommended, all of which may be relevant to establish the extent of Glen Hunt's travel and the scope of his unlawful drug dealing.

7. In order to set up the June 7, 2011 controlled buy, the cooperating witness made a controlled, monitored phone call to Glen Hunt on or about May 25, 2011. In that conversation, plans were made to send the $100 that the cooperating witness owed to Glen Hunt from a prior drug deal. As a result of that call, Sgt. Kelly sent a Walmart "money gram" to Hunt in North Carolina on June 6, 2011. Kelly further informed the affiant that on June 7, 2011, the cooperating witness made a call to Glen Hunt's cell phone to set up the controlled buy. Prior to the controlled buy, Hunt told the cooperating witness that Hunt had with him for sale roxycodone pills in both 30 and 15-milligram doses; 60-milligram morphine pills; opana; and oxycontin pills. The affiant recognizes all these drugs as controlled substances and pharmaceutical drugs for which there is a ready market in the Nicholas County area. In this telephone conversation, the cooperating witness told Hunt that he would be buying the morphine pills.

8. Sgt. Kelly further informed the affiant that he was introduced to Glen Hunt by a cooperating witness who told Kelly that he has been buying controlled substances from Glen Hunt in

4

Nicholas County, West Virginia on a regular and continuing basis for a approximately one and a half to two years. This cooperating witness told Kelly says that he has, during that time, become familiar with Glen Hunt and with his method of distributing drugs into West Virginia and that he was aware of Glen Hunt selling drugs to others in the Nicholas County area on a regular basis over the last 18-24 months.

9. This cooperating witness told Kelly that Glen Hunt has told him on several occasions that Glen Hunt resides in Gastonia, North Carolina, and transports the controlled substances he sells here by driving from North Carolina to West Virginia.

10. The information this cooperating witness has given Sgt. Kelly is consistent with other background information that the drug task force has gathered in and around Nicholas County in the last six months. Based on that information, and on the successful undercover purchase referred to above, Sgt. Kelly and the affiant believe the information provided by the cooperating witness to be reliable.

11. On the morning of June 8, 2011, at approximately 10:40 a.m., Trooper Curtis Adkins of the West Virginia State Police stopped a white 4-door Mercedes 300 Series Sedan bearing New York Registration FAF 8071 (a picture of said vehicle is attached hereto as "Affidavit Exhibit A" and incorporated herein by reference) after the car made an improper turn/failure to signal at or near

the corporate limits of Fayetteville, Fayette County, West Virginia. Sgt. Kelly and the affiant, in a separate police vehicle, pulled up to assist Trooper Adkins with the stop.

12. Sgt. Kelly recognized the driver of the white Mercedes as Glen Hunt, the man from whom he had bought the pills the evening before, as described above.

13. After the white Mercedes sedan was stopped, Fayette County Deputy Shannon Morris, ran his trained, drug-detecting dog around the car.

14. Deputy Morris has informed the affiant that this dog, named "Heark," is a Belgian Malinois that has been trained to detect and alert on the scent of various controlled substances, including morphine. Deputy Morris said that when Heark circled the outside of the white Mercedes sedan, he gave a strong "alert" signal by scratching on the driver door. This signal indicates that Heark detected the odor of a controlled substance in the Mercedes. Deputy Morris told the affiant that he has used Heark to perform similar sniff-searches on over 100 occasions over an approximate four-year period and Heark has never made a false alert. That is, each time Heark has alerted, drugs have been found in the area indicated. Deputy Morris further told the affiant that Heark had been certified as a drug detecting dog by West Virginia Police K-9 Association.

6

15. After Glen Hunt was arrested, the white Mercedes sedan was impounded. That car presently remains in the custody of the West Virginia State Police at or near 305 Reservoir Road, Beckley, West Virginia.

16. It has been the affiant's experience and training that persons who regularly engage in the unlawful sale of controlled substances regularly keep written records of their sales and money they have collected or owe or are owed as a result of drug transactions. Moreover, unlawful drug transactions are normally conducted in cash, therefore, persons making illegal drug sales often carry large amounts of cash with them on their persons or in their cars. Moreover, persons dealing drugs unlawfully often take steps to hide or disguise their ill-gotten cash receipts by employing money orders, safe-deposit boxes and multiple bank accounts. Further, it has been the affiant's experience that drug dealers operating on a scale such as that implied by the evidence outlined alone almost always use a cell phone to manage their business.

17. On June 9, 2011, the affiant, based on the foregoing information and evidence, obtained a warrant from a United States Magistrate Judge in the Southern District of West Virginia, authorizing a search of the white 4-door Mercedes sedan described herein. The affiant executed a search of that vehicle on the same day and found in that vehicle the following, and other, evidence:

    a. Over $6,000 in United States currency, including those 19 twenty-dollar bills used by Sgt. Kelly to

        make the controlled purchase of morphine tablets the evening before, as described in paragraphs 4-6 above;

    b.    The following controlled substances:

        1.    Nine 60-milligram morphine pills of the same description as those Hunt sold to Sgt. Kelly the day before;

        2.    Twelve "COR/132" pills containing adderall, a Schedule II controlled substance;

        3.    Eight "OC/40" pills containing oxycodone, a Schedule II controlled substance; and

        4.    Various unidentified pills and pieces of pills;

    c.    Paper records showing money owed or due;

    d.    A portable Garmin Nuvi GPS-type navigational device, bearing serial number 1C9604681, a photograph of which is attached hereto as Affidavit Exhibit B and made a part hereof by reference;

    e.    A Sony Vaio laptop computer bearing serial number 275270353002738, photographs of which are attached hereto as Affidavit Exhibits C and D and incorporated herein by reference;

    f.    A black Apple Iphone, a photograph of which is attached hereto as Affidavit Exhibit E and incorporated herein by reference;

    g.    A black Sumsung cell phone, a photograph of which is attached hereto as Affidavit Exhibit F and incorporated herein by reference; and

    h.    An AT&T Samsung trac phone, model number SCH-R355C and bearing serial number 268435459611257751, a photograph of which is attached hereto as Affidavit Exhibit G and incorporated by reference herein.

18. The affiant is aware, through training and experience, that portable computers, cell and Iphones and navigational devices are tools of the unlawful drug-dealing trade. Persons dealing drugs illegally use cell and Iphones to contact their customers and

8

sources and the phones often store the number of persons called and the dates, times and duration of such calls. The devices also often contain address lists of persons frequently called by the owner and may contain records of text messages sent and received.

19. Likewise, persons dealing drugs may make use of a portable laptop computer to communicate with customers and sources relating to drug transactions. Further, records of Internet browsing, normally present in the computer's memory systems, may be helpful in locating assets that may be the fruits of drug dealing or in tracing the expenditure of unlawfully obtained funds. Moreover, almost all laptop computers are capable of connecting to the Internet and using electronic mail facilities the internet affords. Records of email sent and received are generally stored in the computer's memory system or may be accessed on particular websites through that computer. These records may be valuable to this investigation inasmuch as they may suggest or reveal associates, travel, co-conspirators, assets and means of concealing assets gotten through illegal drug trafficking.

20. The GPS navigational device may have been used by Glen Hunt to direct him to West Virginia from North Carolina and may further have been used by him to direct him to other places in the country. These devices often contain a memory or record of routes prescribed and routes followed.

21. The record in these devices, all as described above, may be useful to me in determining the nature and extent of Glen Hunt's drug dealing and in identifying and locating others involved in

unlawful drug trafficking in the Southern District of West Virginia and elsewhere.

22. The cooperating witness from which Sgt. Kelly obtained the information about Glen Hunt's drug dealing in the Nicholas County area that lead to Hunt's arrest and the search of Hunt's car that yielded the evidence detailed above further informed Sgt. Kelly that in the cooperating witness's several dealings with Glen Hunt the cooperating witness has witnessed Hunt using a Sony VAIO laptop computer on multiple occasions. During the search of Hunt's car, the affiant also recovered records suggesting that Hunt maintains at least two bank accounts. It is consistent with my training and experience that persons involved in illegal drug trafficking who have bank accounts may transact banking business - including that having to do with proceeds from drug trafficking - by means of computer on-line banking and that the computer may maintain records of those banking transactions which may be relevant in determining the nature and extent of the drug trafficking involved.

Further your affiant sayeth not.

_____
F/Sgt. Lee Ayers, WVSP

Taken, subscribed and sworn to before me this 15th day of June, 2011.

_____
MARY E. STANLEY
United States Magistrate Judge

10



AFFIDAVIT EXHIBIT A



AFFIDAVIT EXHIBIT B



AFFIDAVIT EXHIBIT C



AFFIDAVIT EXHIBIT D



AFFIDAVIT
EXHIBIT E



AFFIDAVIT
EXHIBIT F



AFFIDAVIT
EXHIBIT G